UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Joyce Elizabeth Maio

     v.                          Civil No. 10-cv-235-JL
                                        Opinion No. 2011 DNH 092
Michael J. Astrue, Commissioner,
Social Security Administration

**MEMORANDUM ORDER**

     This is an appeal from the denial of plaintiff Joyce Elizabeth Maio's application for Social Security disability benefits.  See 42 U.S.C. § 405(g).  The administrative law judge ("ALJ") found that Maio, while severely impaired by fibromyalgia and joint pain, see 20 C.F.R. § 404.1520(c), was not disabled because she had the residual functional capacity to perform light work, see id. § 404.1567(b), and was capable of making an adjustment from her previous work as a medical assistant to other jobs existing in the national economy, see id. §§ 404.1520(g). In making those findings, the ALJ rejected Maio's more severe description of her symptoms as "not fully credible" and also rejected a supporting assessment by her primary care provider (a nurse practitioner) as "not supported by objective findings," instead relying on the assessment of a state agency physician who had not examined Maio.

     Maio has moved for an order reversing the ALJ's decision, see L.R. 9.1(b)(1), arguing that it was not supported by substantial evidence.  The Commissioner of the Social Security Administration ("SSA") has cross-moved for an order affirming

that decision, see L.R. 9.1(d), arguing the opposite.  This court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 405(g) (Social Security).  After reviewing the administrative record, the parties' joint statement of material facts, and their respective memoranda, this court grants Maio's motion, denies the Commissioner's motion, and remands the case for reconsideration in light of Johnson v. Astrue, 597 F.3d 409 (1st Cir. 2009), which held that it "was error" in a fibromyalgia case for an ALJ to reject a treating provider's assessment of disability based on the lack of "objective evidence" to support it.  Id. at 412.

## I.  **Applicable legal standard**

"Judicial review of a Social Security claim is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Social Security, 211 F.3d 652, 655 (1st Cir. 2000) (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)).  If the ALJ's factual findings were supported by "substantial evidence," they are "conclusive," even if the court disagrees with the ALJ, and even if other evidence supports a contrary conclusion.  42 U.S.C. § 405(g); see also, e.g., Nguyen, 172 F.3d at 35.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Becker v. Sec'y of

Health & Human Servs., 895 F.2d 34, 36 (1st Cir. 1990) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

That standard is not, however, "merely [a] rubber stamp [of] the ALJ's decision." Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002) (quotation omitted).  If the ALJ's decision was based on "a legal or factual error," or otherwise unsupported by substantial evidence, then it must be reversed and remanded under section 405(g). Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)); see also, e.g., Johnson, 597 F.3d at 411; Nguyen, 172 F.3d at 35 (ALJ's findings are not conclusive where "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts").

A five-step process is used to evaluate an application for Social Security disability benefits. See 20 C.F.R. § 404.1520(a)(4).  The applicant bears the burden, through the first four steps, of proving that she is disabled, i.e., that (1) she is not engaged in substantial gainful activity; (2) she has a severe impairment; (3) the impairment meets or equals a specific impairment listed in SSA regulations; and (4) the impairment prevents her from performing her previous relevant work. Id.  At step five, the burden shifts to the Commissioner to prove that the applicant has the residual functional capacity to perform other jobs existing in significant numbers in the national

economy.  Id.; see also, e.g., Heggarty v. Sullivan, 947 F.2d
990, 995 (1st Cir. 1991).


## II.  **Background**

Maio is a 55-year-old woman from Merrimack, New Hampshire
who has an associate's degree in medical science.  Before getting
that degree, she had been a stay-at-home mom, a cafeteria worker,
and then an office manager.  After getting her degree, she worked
for about eight years as a medical assistant, mostly at St.
Joseph Hospital in Nashua, New Hampshire.  In 2004, she was
diagnosed with fibromyalgia, a "syndrome of chronic pain of
musculoskeletal origin but uncertain cause."  Johnson, 597 F.3d
at 410 (quoting Stedman's Medical Dictionary 671 (27th ed.
2000)).  She kept working, with minor accommodations, until 2006.
At that point, her pain and fatigue allegedly worsened, and she
quit her job.  In 2007, she applied for Social Security
disability benefits, alleging that she had become disabled due to
fibromyalgia and various other medical problems, including
chronic fatigue syndrome, acid reflux, hypertension, pre-
diabetes, anemia, and depression.

Wendy Wright, a nurse practitioner who has been Maio's
primary care provider for more than 10 years, maintains that Maio
cannot work full-time because of the pain and fatigue caused by
her fibromyalgia and chronic fatigue syndrome.  Specifically,

Wright's assessment is that Maio can sit for only 2 hours in an 8-hour workday, stand for only 2 hours, and walk for only 1 hour, requiring frequent breaks during those periods.  But Dr. Charles Meader, a state agency physician who reviewed Maio's medical records in 2008, made a different assessment.  Dr. Meader concluded that the "totality of medical evidence of record indicates that in spite of fibromyalgia, fatigue, and polyarthralgias" (i.e., joint pain), Maio can stand or walk for 6 hours in an 8-hour workday and sit for 6 hours, making her capable of full-time work.[1]

The ALJ held an evidentiary hearing in 2010, at which Maio and her husband testified about her employment history, her medical problems, and her daily activities.  Maio testified that her physical condition varies from day to day.  She has some good days (about 4 or 5 per month), but mostly bad days, on which she feels severe pain and stiffness in her joints, as well as fatigue, which causes her energy to "peter out" by noon, at which point she needs to lie down.  She acknowledged, however, that she can still drive her car, perform basic household chores, and tend her garden.  Maio testified that, at least once per month, she suffers a more intense "flare up" of her symptoms, which requires

---

[1]Dr. Meader gave the "[m]ost weight" to records from Maio's rheumatologist, Dr. Caryn Libbey, who (like Wright) had diagnosed Maio with fibromyalgia, but had not made a residual functional capacity assessment.

her to stay in bed for several days.  Her husband testified that,
during her last months of work, Maio was "totally exhausted" and
"struggled to get through the day."

Shortly after that hearing, the ALJ issued a decision
denying Maio's disability claim.  While acknowledging that Maio
was severely impaired by fibromyalgia and joint pain, see 20
C.F.R. §§ 404.1520(c), and that those "impairments could
reasonably be expected to cause [her] alleged symptoms," the ALJ
found that Maio's testimony regarding the extent of her symptoms
and functional limitations was "not fully credible."  The ALJ
noted, in particular, that Maio's medical records indicated that
she had been "under stress" and "doing way too much" to care for
her granddaughter around the time when her alleged disability
began, but had since been trying to exercise every day (including
both walking and swimming), had declined medications that would
help to ease her symptoms, and had "enjoy[ed] terrifically" an
online medical transcription course.

The ALJ likewise rejected Wright's supporting assessment,
explaining that Wright "is not an acceptable medical source
because she is a nurse," see id. § 416.913 (defining the term
"acceptable medical source" to include physicians, but not nurse
practitioners), and that "her opinion is not supported by
objective findings:  [Maio's] muscle tone is normal and range of
motion is full throughout report," notwithstanding her

fibromyalgia and joint pain.  Instead, the ALJ relied "primarily"
on Dr. Meader's assessment in concluding that Maio had the
residual functional capacity to perform light work, see id. §
404.1567(b), albeit "limited to simple, repetitive tasks, i.e.
unskilled work."

Relying on the testimony of a vocational expert, the ALJ
concluded that Maio, while not capable of returning to her past
work as a medical assistant, office manager, or cafeteria worker,
could make an adjustment to other jobs existing in significant
numbers in the national economy, see id. § 404.1520(g), including
small products assembler, assembly machine tender, and escort
through secure areas.  The SSA's Decision Review Board reviewed
the ALJ's decision and affirmed it without further explanation,
making it the final decision of the Commissioner.  See id. §§
405.420(b)(2), 405.440(b)(1).

III.  **Analysis**

Maio argues that the ALJ's decision was inconsistent with
Johnson, 597 F.3d at 409, a recent case in which the court of
appeals reversed and remanded an ALJ's decision denying
disability benefits to a claimant diagnosed with fibromyalgia.
In that case, the ALJ rejected a treating physician's assessment
of disability because, aside from tenderness at the eighteen
trigger points associated with fibromyalgia, there was no

"objective" medical evidence to support that assessment.  But "since trigger points are the only 'objective' signs of fibromyalgia," the court of appeals concluded that the ALJ's reasoning "was error."  Id. at 412 (citing Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003)).  The court explained that the "lack [of 'objective' evidence] is what can be expected in fibromyalgia cases."  Id. at 414 (citing Rose v. Shalala, 34 F.3d 13, 18-19 (1st Cir. 1994), which reached a similar conclusion regarding chronic fatigue syndrome).

The ALJ committed essentially the same error in this case, rejecting Wright's assessment of disability because it was "not supported by objective findings," despite acknowledging that Maio has tenderness at all eighteen fibromyalgia trigger points (as found by Wright, Dr. Meader, and Dr. Libbey).  The ALJ emphasized, in particular, that Maio has a full range of motion and normal muscle tone.  But "physical examinations [of fibromyalgia patients] will usually yield normal results--a full range of motion, no joint swelling, as well as normal muscle strength," so such findings "simply confirm a diagnosis of fibromyalgia by a process of exclusion, eliminating other medical conditions" that could be causing the patient's pain and fatigue; they do not indicate "that the patient's fibromyalgia is not disabling," as the ALJ suggested.  Green-Younger, 335 F.3d at 108-09 (quotation omitted).

8

The Commissioner argues that this case is distinguishable from Johnson because the ALJ, in addition to noting the lack of "objective" evidence, concluded that Wright "is not an acceptable medical source because she is a nurse." See 20 C.F.R. § 416.913 (defining the term "acceptable medical source" to include physicians, but not nurse practitioners, who are classified as "other medical sources").  But the "ALJ could not simply ignore [Wright's] opinion" on that ground.  Alcantara v. Astrue, 257 Fed. Appx. 333, 334 (1st Cir. 2007) (unpublished).  "Although acceptable medical sources are the primary sources of evidence about the severity of impairment and its effect on work abilities, they are not the sole permissible sources of such evidence."  Id. (emphasis in original).  The ALJ must "weigh all of the evidence," including the assessment of any other "medical source capable of providing evidence about the severity and effects of impairment."  Id. at 335.

The SSA has issued a ruling to guide ALJs in weighing the opinions of other medical sources.  See SSR 06-03p.  Relevant factors that the ALJ may consider include:  (1) "how long the source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to which the source presents relevant evidence to support an opinion"; (4) "how well the source explains the opinion"; and (5) "whether the source has a

specialty or area of expertise related to the individual's
impairment(s)."  Id.  There was no discussion of those factors in
the ALJ's analysis of Wright's assessment (aside from the
erroneous comment about the lack of "objective" evidence).[2]  At
least one factor--the length and frequency of treatment--seems to
weigh in favor of Wright's assessment.

        The Commissioner notes, correctly, that "the ALJ is afforded
a substantial amount of discretion" in "deciding which medical
source opinion(s) to credit."  Dumensil v. Astrue, 2010 DNH 135,
13 (McAuliffe, C.J.).  "But, when exercising such discretion, the
ALJ must ordinarily discuss at least some of his reasons for
accepting one source's opinion over another's," so that the
district court can "determine whether that discretion was
exercised reasonably."  Id. (noting that the extent of discussion
required depends on the particular circumstances).  Here, the
sole reason that the ALJ gave for rejecting Wright's assessment
of disability was one that the court of appeals deemed erroneous
in Johnson:  that it was "not supported by objective findings."
That reasoning is no less erroneous when applied to the

---

        [2]The Commissioner argues that the ALJ implicitly considered
some of the factors, determining that Wright's assessment was
inconsistent with the findings of Dr. Libbey, a specialist in
rheumatology, to whose records Dr. Meader gave the "[m]ost
weight" in his assessment.  But this court cannot discern any
actual inconsistency between Wright's assessment and Dr. Libbey's
findings, nor did the ALJ or Dr. Meader identify one.  Again, Dr.
Libbey made no assessment of Maio's residual functional capacity.
See note 1, supra.

assessments of nurse practitioners than when applied to the assessments of physicians.

Given that Wright's assessment was central to Maio's disability claim and that the ALJ articulated no reasonable basis for rejecting it, this court concludes that the ALJ's decision must be reversed and remanded for reconsideration in light of Johnson.[3]  This court expresses no opinion about what the outcome on remand should be.  It is the responsibility of the ALJ, not this court, to resolve evidentiary conflicts, provided that the ALJ properly applies the law and that the decision is supported by substantial evidence in the record.  See, e.g., Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (citing Richardson, 402 U.S. at 399).

---

[3]On remand, the ALJ should also consider whether Johnson has any bearing on the assessment of Maio's credibility.  See, e.g., 597 F.3d at 412, 414 (noting that daily activities such as performing basic household chores and driving "are not necessarily inconsistent" with a finding of disability due to fibromyalgia, nor is regular "aerobic exercise . . . of a low-impact type," which "is the appropriate treatment for fibromyalgia").

IV.   **Conclusion**

Pursuant to sentence four of 42 U.S.C. § 405(g), Maio's
motion to reverse the Commissioner's decision[4] is GRANTED.  The
Commissioner's motion to affirm that decision[5] is DENIED.  The
case shall be remanded to the Commissioner for further findings
and/or proceedings consistent with this order.  The clerk shall
enter judgment accordingly and close the case.


      **SO ORDERED.**


                                    _____
                                    Joseph N. Laplante
                                    United States District Judge
                                    District of New Hampshire

Dated:  June 7, 2011

cc:  Stephen C. Buckley, Esq.
     T. David Plourde, Esq., AUSA

---

  [4]Document no. 7.

  [5]Document no. 8.

12